21-1626, Harrison against Department of the Army. Mr. Watson, please. Thank you, Your Honor, and may it please the Court. I would like to address the following issues this morning. The first issue is broken up into two parts, so I would refer to it as 1A, and it's whether OPM approved the agency's performance appraisal system that the appellant was evaluated under before her removal. The second issue is whether OPM approved any significant changes to the agency's performance appraisal system that she was evaluated under. And the next issue, which I'll term issue two, is did the administrative judge err in incorporating evidence from the OPM website into her initial decision when it wasn't part of the actual record? And last, did the administrative judge err by shifting the burden to appellant to prove that OPM authorized the agency's performance appraisal system where the agency carried the burden through? On issue 1A, the agency did not provide substantial evidence that OPM approved the 2014 reissue of the Department of Defense construction, which updated or changed the initial performance appraisal system. Of course, Your Honors know, back in 1996, December 31st, 1996, OPM authorized a performance appraisal system for the Department of Defense, agency-wide. But the Department of the Army implemented a performance appraisal system term, TAPES, which the acronym is the Total Army Performance Evaluation System. Can I ask you, am I right? I don't recall until the reply brief in this court seeing anything about this TAPES program. Was this raised previously in this case? Yes, Your Honor. It was raised by my client. She testified to it when it was her turn, but it was in the record. The actual reg was not in the record, but she did testify as to TAPES and made the administrative judge known. It made it known that TAPES was the system that the Department of the Army operated under prior to 2014. And is assuming, putting aside the question of whether this has been raised too late, why isn't TAPES a program, not a system? And programs, I gather, don't have to be approved by OPM. Only systems do. Yes, Your Honor. Well, the plain text of the reg states that it's a system for the Department of the Army. And presumably, it's supposed to apply to, it's supposed to be a compliance with the Department of Defense's present system, but it was a separate system for the Army. And what happened after the Department of Defense obtained approval from OPM in 1996, that the Department of the Army, Department of the Navy, and different departments had their own appraisal systems under the umbrella of the Department of Defense. What happened in 2014 is that the Department of Defense consolidated it and further expanded upon it in 2016. And so they scrapped all the individual systems under the different subparts and went with a uniformed Department of Defense appraisal system. And what I've learned since the initial decision is that it's a program, so it's both. They reissued the 2000, well, they reissued a change to 430, Department of Defense 430 in 2014, and then they implemented a system in 2016 to make it uniform across all non-SES employees. And Your Honor, the problem with the evidence presented at the hearing was, you know, the agency had to maintain their burden approved on that issue as to whether OPM approved the actual appraisal system that Ms. Harrison was under. And in doing so, they presented a letter, but they did not attach the OPM form 1631 to the letter. They did not produce the actual performance appraisal system that was authorized in 1996. And a careful review of the instruction in what I'll term as the 2014 DOE, D-O-V-I, is that it became effective in 2014. So if that was the original one that was approved by OPM, the Department of the Army did not produce it at the hearing. To me, and based on the record, it didn't appear that OPM had actually seen that particular one. There wasn't evidence. And the witness that they had testified on this matter, Mr. Fawcett, that gentleman didn't have knowledge of whether OPM even approved the 2014 change. On cross-examination, he acknowledged that he didn't work for OPM and he had no knowledge of how they would have done it or if they did it at all, which undermines his previous testimony that OPM approved it. And when pressed on it, his only knowledge of whether OPM approved the 2014 DOE was based on the 1996 letter, OPM letter, and nothing else. And because of that, the respondent finds, Mrs. Harrison's argument is, that isn't substantial evidence. If you have a witness testifying about an issue that he has no underlying knowledge of, regardless of whether the administrative judge found it credible, he lacked the basic knowledge to testify on that issue. Because of that, the agency failed to meet its further proof on both the documents and Mr. Fawcett's testimony. And as to the 2016 change, I would argue that while it does say it's a program, there were steps taken to further expand upon the 2014 DODI. And the administrative judge indicated in her initial decision that that particular update was not approved by OPM. There's no evidence in the record of it. There's no letter referencing it. The agency did raise that issue at the hearing. And Mr. Fawcett himself also testified that he was unaware. And to issue two, your honors, there was argument made at the hearing on the initial decision. And after the argument, after the record closed, the administrative judge went out to the OPM website, incorporated aspects of what she found on that after the record was closed. Mrs. Harrison believes that that was improper. What use do you think the administrative judge made of that website information other than to simply say what the regulations provide, which is either correct or incorrect, by just looking at the regulations, which are matters of public record and matters of law? Why is the citation to the website harmful in the sense that does it or does not add anything to what is perfectly proper to look at, namely the regulation books on the shelf? Yes, Judge. I believe it was improper because while she did that to support or to support or buttress the agency's argument, she did not go out and search for the previous performance appraisal system for the Department of the Army, which is taped to create a full record. That's also a regulation. She didn't do that either. And that would have been appropriate as well, Judge. I believe she should have just stuck with the record and decided the case on the merits based on the record before her. And that was the appellate's concern. You are into the rebuttal time you reserved. You can continue or save that time for rebuttal. I'll save that time for rebuttal, Your Honor. Thank you. I think your screen is now going to be moved away, and so pause for a second. And then to see what is going on, can we take a photo of us with him? Okay. Mr. Carson, when you're ready. Thank you, Your Honor. May it please the Court. Your Honor, the primary issue here is whether substantial evidence supported MSPB's decision that Ms. Harrison's dismissal was pursuant to an OPM-approved performance appraisal system. And it did. The administrative judge relied on five things in reaching her conclusion. One, plain text of DOD instruction 1400.25, Volume 430, which is the DOD's current performance appraisal system. And I'll just refer to that as Volume 430 for ease of reference. The second thing she looked at was the OPM approval letter that was explicitly and directly incorporated verbatim, cut and pasted into Volume 430. The third thing she looked at was the plain text of DODI 1400.25, Volume 431, which is the DOD performance appraisal program. The fourth thing she looked at, or considered, was the hearing testimony of the Army Human Resources Specialist, Andrew Fawcett. And then fifth, she used some information from the OPM website to corroborate the information that's in the statute and regulations that Mr. Fawcett testified to, and that's found in the DOD instructions themselves. The confusion here on the part of the petitioner seems to be over what constitutes an appraisal system versus an appraisal program. We're dealing with two different and distinct DOD instructions, or issuances. The first being Volume 430, which establishes on its face the DOD performance appraisal system. The second one we're dealing with is Volume 431, which on its face establishes the DOD performance appraisal program. They're both issued pursuant to statute and regulations. An appraisal system is high-level. It's a framework. It's a high-level plan of policies and parameters for the administration of a program. The program then delves into the details. The system, the appraisal system, is required to be approved by OPM. That's in the statute, that's in the regulations. The program does not need to be approved by OPM. Both the statutes and the regulations address that as well. Primarily by their silence, they don't require OPM to approve the program, whereas they explicitly require OPM to approve the system. Do you understand to be any dispute about what you're saying now? I'm sorry? Is there a dispute in this case? I mean, I didn't see, I see you made these points in your red brief. I didn't see any contradiction to it in the red brief. Well, I think it's important to draw these distinctions. It seems that from our reading of Petitioner's briefs, they're conflating at times. Ms. Harrison seems to conflate at times what constitutes a system versus what constitutes a program. Then the court looked at... Well, that's true, and that was a little bit of confusion of the testimony when counsel for the plaintiff asked whether or not 431 wasn't a change to 430. And the answer was, no, they're different things. Correct. So in 430, the administrative judge concluded that 430 was approved by OPM based on two things. One, the letter that's incorporated directly into the instruction. And then two, in looking at that... Where is that letter incorporated in the 2014? Correct, yes, your honor. It's at Appendix 332. I see the letter at 332. Now, incorporate that for me. So, are we talking about the original 1997 standard? Correct. So, right, there's a two-step process. Do we have the 1997 standard in the record? I didn't think we did. It is not in the record, your honor. I found it, but I don't know whether it's accurate or not. So, where do we know that the 1996 letter actually refers to the 1997 system? Because of the text of the letter? I'm sorry, your honor? How do we know, how do we made up the 1996 letter to the 1997 system? Well, this letter... What I'm looking at, so on 326, which is the opening page, it says... This is a reissue of Volume 430, C Reference E. Reference E, two pages later, 329, is 430, Performance Management Plan, December 1st, 1996, as amended, hereby canceled. Right? And do we know that the December 1996 version is what the January 1996 letter approved? Yes, your honor, that's... How do you know that? Well, it's based on the record before the MSPB, your honor. What part of the record in front of the MSPB? Well, that this instruction was reissued pursuant to that... I'm not talking about the reissue, I'm talking about the original creation, 1997, right? Yes, your honor. Okay, so we have this 1996 letter, right? Correct, your honor. And so how do we know, it says in response to your request of January 26, are we just to assume that that January 26 request was with regard to a December 1, 1996, 430? Well, your honor, that's certainly, I think, the conclusion to be drawn that represented in the DODI that OPM approved this performance appraisal system that was originally issued in 1996 and then reissued here in 2014. Is there something odd about OPM's January of 1996 and DOD not issuing it until 11 months later? Or is that it just takes 11 months to issue something after OPM has approved it? Well, I think it's probably a timing issue in terms of DOD drafting the system, submitting it for approval, and then the process of them actually issuing it pursuant to their issuance requirements as a formal DOD instruction. And so the administrative judge took into consideration that approval letter and then the testimony of the Army Human Resources Specialist who testified that she found credibly that there have been no significant changes to the appraisal system in the interim that would require reapproval by the OPM. And here, to this point, I would like to address the issue raised by Petitioner for the first time in her reply brief. There is no record of, at the MSPB level, before the administrative judge, and Petitioner did not raise in her opening brief this issue of tapes being the original performance appraisal system. So it would be our position that that argument has been waived. But even if it hasn't been waived, what did his witness testify to as to tapes? He said she brought it up in their testimony. That is not before the record. That's not in the record that's been transferred to the court. The record that was transcribed didn't include all the transcripts. And I got the transcript, and unfortunately I didn't bring the whole transcript to the argument. I just brought the part that deals with the approval. But what's your recollection of what she testified to? The copy of the transcript I have does not have her testimony about tapes. We went back and looked at the record that we received, and we did not see testimony regarding tapes. But for the sake of argument, let's assume that she testified about tapes and it was an argument or an issue that was before the administrative judge. I would say that I find that questionable because Petitioner's counsel just said one of his complaints was that the administrative judge didn't go out and search for tapes and review that on her own. So I question whether or not it was really an issue that was raised before the administrative judge and before her. But putting that to the side, Petitioner's counsel talks about the plain text of tapes. Let's look at the plain text of tapes. It's attached to Petitioner's reply brief. The title says system, and then under section 1. whatever, it says it's basically a program under the 430 system. Yes, you're anticipating what I'm going to talk about. Yes, Your Honor. So the title of it is a bit of a misnomer, perhaps, by calling it a system. Because, Your Honor, you read the document, and you're right. At provision 1-1 purpose, I'm looking at page ADD 5. It's attached to the reply brief. It's attached to the reply brief. Paragraph C states that this chapter sets forth policy for civilian personnel performance management programs of the Department of the Army that are in conformance with the DOD performance appraisal system approved by the Office of Personnel Management. So tapes was an old program, an appraisal program that the Army had. Now I will grant that it is no longer in effect, but it was phased out in favor of the current program that's in effect, Volume 430. So tapes is not the old system. There's no evidence in the record. There was no evidence before the administrative judge that there was an old, different appraisal system that got canceled, and now we have this new one that isn't approved by OPM. The only evidence in front of the record is that the performance appraisal system was approved and that there had been no changes to it, significant changes to it, over the years. Was the witness who was a human resources officer in the Department of Defense or Army? He was with the Department of the Army, Your Honor. And was he in that position or similar position as far back as 1996? He was not, Your Honor. He had been in that position, it was either two or three years, but as part of his job, he worked, he testified, and I can get the record citation for you, but he testified that he worked regularly on a daily basis with these instructions. He was very familiar with them. But what qualified him to testify about the absence of change from 1996 if he wasn't there for the lion's share of that time? I think that the administrative judge determined that his testimony on that issue was credible because of the fact that he normally, on a regular basis, worked with those instructions, was familiar with them, and had to be familiar with them as part of his job. And that was only one part of the evidentiary record on which the the reissue in 2014 was not substantively different from the December 1996 one. It was a big part of her conclusion of that finding. I didn't think that his qualifications to be able to testify as to whether significant changes had occurred weren't challenged. Were they? I mean, it's the cross-examination from your friend in opposition was whether or not he knew anything about how OPM went about approving plans. Yes and no. And I said, no, I don't know. I don't know what standards they use, how they do an approval. I think that's correct, your honor, and I would say that his knowledge about how OPM goes about its job is, it's really neither here nor there. I mean, how OPM does this job is different from whether or not he had enough experience to recognize the difference between one system and another. Correct. I didn't see anything in the transcript about anyone setting him up as qualified or questioning whether he was qualified to testify as to significant change. He was simply asked, have there been significant changes you're aware of? No, sir, no significant changes. On cross-exam, he was asked, well, isn't 431 a significant change? He said, no, that 431 is not a system that's appropriate. Correct. And then there was a question about whether or not he cross-examined about whether he would have any way of knowing how OPM went about making this change. He said, no, I don't work over there. Correct, your honor, and I think that's one of the reasons. I think the record is just is silent as to whether or not there was a challenge as to Mr. Fawcett's talents or his ability to know whether significant change. He testified there was no significant change. The ALJ accepted that as a fact. Right. It's a little much to say that she actually credited his testimony as on his ability to know about, to assess whether there were changes. Well, your honor, I think that she did in her opinion at Appendix 5, she testified or she wrote that OPM's letter advised the agency to send OPM for approval. And I'm looking at the middle paragraph on Appendix 5. They incredibly testified there have been no such changes. Right. That's what I saw. She said as to Fawcett. Right. And I mean, I think you would infer from that. But it hadn't been cross-examined as to his skills in being able to know the difference between one system and the other as it's written. Well, to your point, I think it would probably be a combination of things. I think the administrator probably inferred from his experience and the fact that he worked with these instructions. They're part of his daily job. He'd only been there two years. He probably hadn't had a lot of experience with the old system. Well, I think that the administrator in making her credibility determination, I think he combined with the fact that there was no challenge to his credibility on that point combined with... The elephant in the room is that no one put in evidence and record the 1997 system and laid it on the table and analyzed it to the 2014 system. Right? Yes, Your Honor. But I think it's fair. And I think under the substantial evidence standard, I think it's fair to take the and the testimony that there have been no significant changes to the system since it was first approved and find that there's substantial evidence that it is an OPM-approved performance appraisal system. So, for these reasons, we would ask that you affirm the MSPP's order. Hold on one second. Hold on one second, please. We have to get the screen lined up so that you can see us and we can see you. We'll be with you in about 10 seconds or 20 or something. Okay. Thank you for your patience. No problem, Your Honor. I just want to address a handful of issues. First of all, the complete record for both days of the hearing will show the second day of the hearing is when my client, Mrs. Harrison, testified that Tate was the department of the takes issue with that, but that is in the record before the administrative judge. And the significance of the change is this, Your Honor. Under Tate's, there were five rating standards. There was one through five. And when 2014 came about and the Department of Defense started standardizing its entire plan, the appraisal system, they switched it from one, three, and five. So, if you were an employee and you had a five on one of the critical elements, maybe a one, there was less of an opportunity to arrive at that three. If you got too many ones on an evaluation, it significantly impacted your appraisal. The next point I want to raise, is if you look at the reply brief to Addendum 13, you'll note that the actual 1996 appraisal system that was approved is cited here. And it says DOD 14-25M, Subchapter 430, Appendix B. So, the appraisal system that was approved was attached to Addendum B. And that was the one that Tate operated on, if it's going to be construed as a program for Department of the Army. Yet, in the record, when you look at, when you look at Appendix 326, there is no Appendix B. It talks in terms of enclosure. There's no Appendix B in there. When you actually get to the alleged DOD performance appraisal system at Appendix 334, there is no Appendix B citation whatsoever. So, this is a different appraisal system. And despite discovery and a requirement under the MSPB rule to provide the agency file for this case, and after subsequent discovery, this is all that the agency produced to put forward as evidence of their appraisal system. And I just want to, I think I mentioned this before, Your Honors, but I just want to make sure that I get this in. The agency completes the July 31st, 1996 OPM letter with the approval of the 2014 DODI. At the surface, their arguments tend to make sense if you just look at the statutory scheme and the posture of this court's precedent. However, as Your Honors pointed out, the old DODI 430 is not in the record. It was amended at some point, and that version was canceled. We don't have a copy of it. It's not before you today. The agency actually operated, the Department of the Army actually operated under tapes until the entire system was changed in 2014. But nowhere is evident in the record that the Department of Defense or the Army produced a subsequent letter from OPM indicating that that 2014 change was even reviewed and approved by OPM. And that's really the issue here, Your Honors. That would not be the issue if tapes is actually a program and not a system, notwithstanding its name. Is that right? Your Honor, I believe it was a system for the Department of the Army. Mrs. Harrison was an Okay. But whatever it was, the performance appraisal plan that she was under was the one governed by the 2016 change, and there's no approval of that either. And with that, Your Honors, I rest. I think I'm out of time. Thank you very much. Thanks to you. Thanks to Government Council. Case is submitted. We'll stand in recess.